Case 1:01-cv-00199   Document 5   Filed in TXSD on 01/17/2002   Page 1 of 21

5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 7 2002

| | | |
|---|---|---|
| MANUEL ALBERTO MARTINEZ,, | § | |
| Petitioner-Defendant | § | |
| | § | |
| v. | § | CR B-98-394-01-S |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff | § | |
| (CA B-01-199) | § | |

Michael N. Milby
Clerk of Court

## GOVERNMENT'S ANSWER AND MOTION FOR DISMISSAL UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. § 2255

1.

The court ordered the government to respond to Martinez' motion requesting appointment of new counsel, construed as a 28 U.S.C. §2255 motion filed on November 28, 2001, by February 25, 2002. The government moves to dismiss and, in the alternative, moves for summary judgment.

The court also ordered the government to "include the transcript of the trial". There was no trial. The transcripts from the rearraignment and sentencing were prepared in connection with Martinez' direct appeal in *United States v. Martinez*, 00-40177 (Docs. 85–transcript of rearraignment; 94–transcript of sentencing hearing held 1/13/00; 96–transcript sentencing hearing 11/5/99).

1

2.

The government denies each and every allegation of fact made by Martine, except those supported by the record and those specifically admitted herein, and demands proof thereof.

3.

Martinez a/k/a James A. Dupont a/k/a Albert Longoria was charged in a six-count indictment on July 7, 1998 in the Brownsville Division of the Southern District of Texas in CR B-98-394 (Doc. 1). The indictment was superseded on July 21, 1998 (Doc. 6). Martinez was charged with mail fraud, committed on July 25, 1993 (count one), January 25, 1995 (count two) and June 25, 1996 (count three) in violation of 18 U.S.C. § 1341; theft from organizations receiving federal funds, committed between January 1, 1994 and January 1, 1995 (count four); January 1, 1996 and December 16, 1996 (count five) and January 1, 1995 through December 31, 1995 (count six), in violation of 18 U.S.C. § 666(a)(1)(A)(b); and money laundering, committed April 4, 1996, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (count seven) (Doc. 6).

Martinez previously received appointed counsel on July 8, 1998, Assistant Federal Public Defender Timoteo Gomez (Docs. 3-4). He later hired attorney's John J. Ritenour, Jr. and Marina Thais Douenat, effective July 29, 1998 (Docs. 7-10).

On December 3, 1998, Martinez was found mentally incompetent to stand trial following two medical evaluations and an evidentiary hearing. Martinez was ordered hospitalized for treatment (Docs. 50, 51). Following treatment, Martinez was declared competent to stand trial by government medical personnel on or before May 13, 1999 (Doc. 58).

Meanwhile on February 5, 1999, attorneys Ritenour and Douenat moved to withdraw from representing Martinez. The motion was denied (Doc. 55)

A hearing was held on the Martinez' competency on June 24, 1999. The court agreed with the medical report, declaring Martinez competent to stand trial (Doc. 63).

Also on June 24, 1999, Martinez, with the assistance of attorney Ritenour, entered a guilty plea to counts two, five and seven in conformance with a written plea agreement with the government. In exchange for his guilty plea to those three counts, the government agreed to dismiss the remaining counts of the superseding indictment; recommend a three-level downward adjustment for timely acceptance of responsibility; and recommend Martinez be incarcerated in an appropriate federal medical facility. Martinez agreed to plead to the three counts and to waive the imposed sentence or the manner in which it was determined if the sentence fell within the applicable guideline range (Doc. 65, p. 161). Martinez acknowledged

that he

> is aware that Title 18, United States Code, Section 3742
> affords a defendant the right to appeal the sentence
> imposed. Knowing that, the defendant waives the right to
> appeal the sentence (or the manner in which it was
> determined) if such sentence is within the guidelines
> range as determined by the Court. This agreement does
> not, however, affect the rights of the defendant to appeal
> an illegal sentence as set forth in Title 18, United States
> Code, Section 3742 (a). Nor does this agreement affect
> the rights of the defendant to appeal based upon
> allegations of ineffective assistance of counsel or
> prosecutorial misconduct.

(Doc. 65, p. 161).

Martinez entered his guilty plea and executed the written plea agreement

under oath (Doc. 85, pp. 2, 24-31). He advised the court he read the plea agreement

with his attorney (Doc. 85, p. 41) and attested that "I have read this plea agreement

and carefully reviewed every part of it with my attorney. I understand this

agreement and I voluntarily agree to it." (Doc. 65, p. 167). The court accepted

Martinez' guilty plea, noting the plea was informed, knowing and voluntary (Doc.

85, p. 47).

In the revised PSR, the probation department grouped the three counts of

conviction together under USSG §§3D1.2(d) and 3D1.3(a). Applying §2S1.1 (the

money laundering guideline), the base offense level was determined to be 20. A

four-level upward adjustment, as a specific offense characteristic, was

recommended based upon the loss that was less than $1 million but more than $600,000 under USSG §2S1.1(b)(2)(E). The department further recommended a two-level upward adjustment for abuse of trust, under §3B1.3, and for obstruction of justice under §3C1.1, for an adjusted offense score of level 28. The department further recommended a three-level reduction for timely acceptance of responsibility under §3E1.1(a, b(2)), resulting in a total offense score of 25, criminal history category I, bearing a punishment range of 57 to 71 months (PSR, ¶¶57-69, 94-95).

Martinez filed written objections to the PSR, including challenges to the application of USSG §2S1.1 to the facts of the case, amount of loss attributable to him, and the obstruction of justice enhancement (Doc. 73). The probation department responded to those objections in the revised PSR and the Addendum to the PSR. Martinez filed a sentencing memorandum on November 1, 1999 in support of his objections (Doc. 77).

On November 5, 1999, the sentencing hearing commenced with Martinez represented by attorney Ritenour. In light of the absence of any evidence to rebut the findings set forth in the PSR, the court overruled the bulk of Martinez' objections, reserving only the issues of the obstruction of justice abuse of trust adjustments, and the appropriate base offense level guideline application (fraud or money laundering guideline–§§2S1.1 or 2F1.1) (Doc. 96, pp. 7-9). The court then

entertained live testimony from several government witnesses, including the author of the PSR, revised PSR and Addendum to the PSR 1 R. 80; (Doc. 96, pp. 9-104).

At the conclusion of the November 5, 1999 sentencing proceeding, the court heard arguments from the parties. The court sustained the objection to the abuse of trust position but overruled the objection on the obstruction of justice claim. The court reserved ruling on the base offense level complaint as to paragraph 60 of the PSR (Doc. 96, pp. 104-24).

At the final sentencing proceeding held on January 13, 2000, the court overruled the objection to the application of USSG §2S1.1 (Doc. 94, pp. 7-8). The PSR was adopted in all other material respects, resulting in a total offense score of 23, criminal history category I, bearing a punishment range of 46 to 57 months (Doc. 94, p. 11). The court then sentenced Martinez within the applicable guideline range to concurrent 57-month terms of imprisonment. He was ordered to pay $300 in special costs, and $953,322.07 in restitution in 35 equal monthly installments . He was further ordered to serve concurrent three-year supervised release terms (Docs. 82, 84; Doc. 94, pp. 14-19).

On January 20, 2000, Martinez moved for appointed counsel (doc. 83). Attorneys Ritenour and Douenat moved to withdraw on January 24, 2000 (Doc. 86). The district court granted the motion to withdraw in an order entered February 7,

2000 (Doc. 90). On the same date, Magistrate Judge Felix Recio appointed Leticia Barguiarena to represent Martinez on appeal (Doc. 91).

On May 19, 2000, attorney Barguiarena moved to withdraw as attorney. The motion was denied on May 24, 2000 (Docs. 92-93).

Attorney Barguiarena pursued an appeal on Martinez' behalf. Three issues were raised in the appeal: one issue concerning the application of USSG §2S1.1 (the money laundering guideline) to the facts of the case; a challenge to the two-level upward enhancement for obstruction of justice under USSG §3C1.1; and an attack on the amount of loss attributable to Martinez. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). The government moved to dismiss the appeal based upon the written waiver Martinez executed at rearraignment. Nevertheless, the government addressed the substance of the arguments raised on direct appeal. The case was heard on the oral argument calendar in the Fifth Circuit on June 4, 2001. *See* Fifth Circuit Docket Sheet for *United States v. Martinez*, 00-40177.

In a published opinion delivered August 27, 2001, the Court agreed that Martinez waived his appellate complaints in the lower court; however, the court also found that two complaints were not waived. The court observed that attorney Barguiarena did not file a reply brief addressing the government's waive argument, and described that omission as a "gross failure", the court nonetheless reviewed the

7

issues presented. *Id.* The Court found that Martinez waived his complaint concerning the amount of loss attributable to him by the probation department, *id.* at 438-39, and addressed the substance of the remaining issues. *Id.*, at 438-41. The appeal was dismissed in part and the lower court's ruling was affirmed in part. *Id.*

The mandate issued on September 18, 2001 (Doc. 97). On November 28, 2001, Martinez moved for appointment of counsel (Doc. 100). The Magistrate Court construed the motion as a post-conviction pleading filed pursuant to 28 U.S.C. § 2255 (Doc. 101). The government was then ordered to respond by February 25, 2002 (Doc. 102).

This is Martinez' first post-conviction pleading. The government moves for dismissal, or in the alternative, summary judgment.

4.

**ALLEGATIONS**

Martinez complains strictly about the representation he received on appeal from attorney Barguiarena. He claims, in conclusory fashion, that he "provided extensive data and supporting proof which would have voided the Judgements [sic] of conviction...", but that counsel "ignored" those facts and relied upon the arguments raised by trial counsel. He claims the appeal was done hurriedly and with the omission of "numerous facts" that were "relevant". (Doc. 100, part III)

In Part IV of his motion, Martinez also argues in conclusory fashion that he asked attorney, in a letter dated September 19, 2001, to file a motion for rehearing, raising issues not previously presented. In Part V, Martinez points to language contained in the published opinion as proof of ineffective assistance of counsel. He argues that new counsel should be obtained to raise unidentified new claims in a rehearing petition "deliberately ignored" by attorney Barguiarena.

5.

The court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §2255 (eff. April 24, 1996). Martinez is currently incarcerated an United States Bureau of Prisons medical facility in Fort Worth, Texas. He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2255 from his conviction in the Houston Division of the Southern District of Texas. A § 2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence." *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted). Relief under a §2255 motion "is warranted for errors that occurred  at trial or sentencing." *Id.* He seeks relief from his conviction and sentence, and the relief sought under § 2255 is appropriate .

6.

The underlying facts of the case are set forth in *Martinez*, 263 F.3d at 437. The government also includes a short summary based upon the PSR and portions of the record. The case involves an incredible display of civic malfeasance by Martinez, a La Feria, Texas employee , who embezzled nearly a $1 million during the course of his service to the citizens of that South Texas town.

Martinez was hired by the City of La Feria, Texas in 1983 as a cashier. In 1987, he was promoted to City Clerk, a position he held until the submission of a resignation on December 16, 1996. As an agent for La Feria between February 1, 1987 and December 16, 1996, Martinez was responsible for the processing and collection of fees, taxes and payments remitted by taxpayers and customers; the mailing of bills; the issuance of building permits and the processing and handling of all banking transactions.

La Feria was the identified agency responsible for conducting and providing services to customers, residents and taxpayers of the city and in return for services rendered. Revenue by the city was realized through property taxes, franchise taxes paid by local utility companies, utility charges for water services, municipal court fines and building permit fees. In addition to a General Account Fund, the city maintained accounts with city funds at the First National Bank of La Feria (FNB).

10

Daily deposits of city funds into the General Fund necessitate the period redistribution of funds between the General Fund account and other city accounts. A "reconciliation of accounts" is performed on a monthly basis by a city employee to ascertain the amount of money that should exist and be maintained in other accounts. Funds are then transferred from those accounts to the General Fund as required.

La Feria received federal funding in excess of $10,000 per year during the scope of the offenses. The identified city personnel involved with the handling of financial matters were City Manager Sunny Phillip, Financial Director, Clerk, Utility Billing Clerk, the Accounts Payable Clerk and the Office Cashier.

During the summer, 1996, Phillip became aware of a severe cash flow problem for the city that was incongruent with the city's economic climate. His ensuing review of finances revealed city employees were not following established procedures in a timely fashion. Phillip hired a Certified Public Accountant, Lise Stephens, as a new Financial Director, and she participated with an accountant/auditor, Doug Smith, to prepare for an annual audit. It was ascertained that Martinez' bank deposit procedures were suspect. Rather than provide daily deposit slips, Martinez provided the slips after four to five working days. Register tapes of monies received by the City and the deposits made by Martinez did not jive

11

with, correspond to each other, particularly in relation to cash and check transactions.

On October 1, 1996, Shepherd determined that $10,994.89 was missing from the financial records. Months later, it was evident that the transfer of those October 1 funds could not be reconciled with the city's banking records. Martinez was instructed to produce the missing deposit slips, and was advised to produce a deposit slip and checks for the November 8, 1996 deposit. The following day, Martinez produced checks from two companies, GT Company and H&H Company for payment of city taxes that did not reflect proper transfer of funds from the city;'s Utility Billing account into the General Fund account. Martinez attempted to produce the missing $10,994.89 in checks and cash on December 9, 1998 after a strange visit to the city vault. A subsequent reconciliation of the checks and cash reflected out-of-state payments of debts owed to the city from November, 1996–not September or October, 1996. Martinez produced false deposit records on December 13, 1996. When Martinez was to be confronted about the financial discrepancies on December 16, 1996, Martinez departed for lunch and disappeared. Subsequent FBI and Department of Public Safety investigators were called into the city offices. On December 23, 1996, Martinez telephoned Phillip, admitting he embezzled more

than $50,000 and indicating a desire to pay the city back. Martinez later submitted a letter of resignation after Christmas, 1996.

Martinez was shown to have embezzled money by stealing franchise taxes paid by utility companies to the city and creating false documents to be forwarded via United States mail to the victims; over billing utility bills via United States mail for certain customers such as school districts and grocery stores; stealing tax payment checks from out-state customers who submitted property tax payments to the city.

Martinez high-tailed it out of town, and he was found months later in San Antonio, Texas. False passports and other identifications, in the names of James A Dupont and Ryan Derrick Dietrich, were found in Martinez' hideout. Other documentation reflecting the embezzlement and fraudulent scheme were also seized there. Count two involved the mailing of fraudulent records, namely a utility bill card addressed to El Centro Foods, #2, on January 25, 1995. Count five involved the theft of $3,178.78 and$ 3,340.96 from Central Power and Light Company (CP&L) between January 1, 1994 and January 1, 1995. Count seven involved the laundering of the proceeds from the misapplication and embezzlement of $1,300 on April 4, 1996 from the city of La Feria, after the city had received more than

13

$10,000 in federal assistance. In total, the government identified $953, 322.07 as

having been embezzled by Martinez:

```
City of La Feria-----------------$514,556.11
El Centro Food Store------------- 28,631.74
Whataburger-----------------------12,204.21
La Feria Indep. School Dist.----390,693.00
Cameron County Housing Auth.-- 2,122.41
GTE-------------------------------------502.49
CP&L------------------------------------649.93
FNB(now Harlingen Natl. Bank—3,972.18
```

*See also* Addendum to the PSR; Doc. 96, pp.48-66, 67-76, 77-78, 80-92).

The government developed that Martinez and others used at least 67 different

bank accounts, and multiple trust, holding, investment and/or real estate

companies–that Martinez controlled, to conceal the nature of the illegal scheme and

to launder the proceeds of the illegal scheme. Forensic accounting of Martinez'

schemes reflected an average of 28 monthly deposits being made in Martinez'

accounts between 1987 and 1996. Martinez utilized numerous post office boxes he

rented to facilitate the mail fraud and laundering of funds. The amount of money

embezzled from the La Feria city coffers during the scope of the schemes to which

he pled guilty is equivalent to 50% of the city's annual operating budget (

Doc. 96, pp. 26-35-48; PSR,¶ ¶§6, 18, 33).

14

7.

The four grounds justifying relief under 28 U.S.C. § 2255 are (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack". 28 U.S.C. § 2255 (2000). Thus motions to vacate sentences "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted); *see Davis v. United States*, 417 U.S. 333, 346 , 94 S.Ct. 2298, 2305 (1974); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

A "'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 1594 (1982)). Once the direct review process has been terminated, a presumption of finality attaches and the conviction is reviewable only on issues of constitutional or jurisdictional magnitude. *Shaid*, 937 F.2d at 232 (citing *Hill*, 368 U.S. at 428, 82 S.Ct. at 471). If a claim of constitutional or jurisdictional dimension is raised, it is reviewable for the first time

15

on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice. *Id.*  On the other hand, "[n]onconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994).

To obtain post-conviction relief in a collateral attack, a defendant must show either (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *see Frady*, 456 U.S. at 167-68, 102 S.Ct. at 1594, or (2) that he is actually innocent. *Shaid*, 937 F.2d at 232. "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611-12 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999).   To prove actual innocence, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no fact finder] would have convicted him." *Id.* (citations and quotations omitted).

8.

To establish ineffective assistance of counsel, the §2255 petitioner must allege and prove (1) that his counsel's performance was deficient and (2) that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *United States v. Walker*, 68 F. 3d 931, 934 (5th Cir. 1995); *see also Glover v. United States*, 531 U.S. at 198, 202-04, 121 S.Ct. 696, 700-

16

01(2001)(discussing factors to consider in evaluating claim of demonstrate prejudice).

Under the first prong, counsel's performance is deficient if it is objectively unreasonable. *Walker,* 68 F. 3d at 934. Under the second prong, prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068; *accord Glover,* 531 U.S. at 204, 121 S.Ct. at 701 (citing, *inter alia, Strickland).* Significantly, the petitioner making the claim of ineffective assistance must identify the acts or omissions that are alleged to have been the result of unreasonable professional judgement. *Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066. Mere conclusory allegations are insufficient to raise a constitutional issue in a habeas case. *United States v. Woods,* 870 F. 2d 285, 288 n.3 (5th Cir. 1989); *Schlang v. Heard,* 691 F. 2d 796, 799 (5th Cir. 1982); *Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 842 (1993)("[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'")(quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

A claim of ineffective assistance of counsel may be rejected based on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's

performance. *Micheaux v. Collins*, 911 F.2d 1083, 1090-91 (5th Cir. 1990). The failure to prove both components of the *Strickland* test, either a deficient performance or actual prejudice, defeats an ineffective assistance claim. *United States v. Abner*, 825 F.2d 835, 846 n. 18 (5th Cir. 1987).

9.

First, the complaint that attorney Barguiarena rendered constitutionally deficient representation was resolved in the Fifth Circuit. The Court entertained the arguments presented notwithstanding any error by counsel in failing to *file a reply brief*. No prejudice is shown since the argument were considered. *See Briseno v. Cockrell*, 274 F.3d 204, 208 (5th Cir. 2001)("to demonstrate prejudice, the petitioner had to show a reasonable probability that, but for his counsel's unreasonable failure (in this case, to file a merits brief), he would have prevailed on his appeal.") (citation omitted); *United States v. Dovalina*, 262 F.3d 472 (5th Cir. 2001)(where court reviewed evidence to support conviction and found that any error in appellate's counsel's failure to adequately brief an appellate issue was not prejudicial to Dovalina's right to receive a fair trial and have his case adequately reviewed).

Second, Martinez' claims are too vague and conclusory to address on the merits. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (vague,

conclusory claim subject to dismissal); *United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995) ("Mere conclusory" statements are insufficient to require limited discovery or an evidentiary hearing.). Moreover, the allegations are inadequate to support a claim of ineffectiveness in any event. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

Third, Martinez has no right to require attorney Barguiarena raise every non-frivolous argument on appeal. *See Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001)(citing *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). A post-conviction petitioner "must show that the failure to raise [an] issue on appeal rendered the entire proceedings, trial and appeal, fundamentally unfair....and [he] bears the 'highly demanding and heavy burden in establishing actual prejudice,' not merely that 'the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (citations omitted).

10.

No evidentiary hearing is necessary to resolve issues presented. *United States v. Samuels*, 59 F.3d 526, 530 & ns.16-17 (5th Cir. 1995)(citations omitted);*United States v. Bartholomew*, 974 F.2d 39,41-42 (5th Cir. 1992). Longoria alleges no facts which would be the proper subject of a motion to correct sentence, vacate the judgment, or which would warrant an evidentiary hearing under either 28 U.S.C. §

2255. Therefore, the government moves for dismissal, or in the alternative, summary judgment.

CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the government respectfully prays that Martinez' §2255 petition be dismissed or, in the alternative, be subject to summary dismissal.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

JAMES L. TURNER
Chief, Appellate Division
Assistant United States Attorney

JEFFERY A. BABCOCK
Assistant U.S. Attorney
P.O. Box 61129
Houston, Texas 77208-1129
Texas Bar No. 01481400
Federal Bar No. 9311
(713) 567-9201

\

## CERTIFICATE OF SERVICE

I, Jeffery A. Babcock, Assistant United States Attorney,  certify that a true

and correct copy of the above document has been served by placing same in United

States mail, postage prepaid, today, January 14, 2002, addressed to:

Ivan Arturo Andarza
Andarza & DeCoss
1718 Boca Chica Blvd.
Brownsville, TX 78520

cc: Leticia Barguiarena
    Barguiarena & Barron
    302 Kings Highway, Suite 107
    Brownsville, TX 78521

Jeffery A. Babcock
Assistant U.S. Attorney