## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 8 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MANUEL ALBERTO MARTINEZ, | § | |
| Petitioner-Defendant, | § | |
| | § | |
| v. | § | (CA B-01-199) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff. | § | |
| (CR B-98-394-01-S) | § | |

### GOVERNMENT'S SUPPLEMENTAL ANSWER
### AND MOTION FOR DISMISSAL UNDER
### 8(a) OF THE RULES FOLL. 28 U.S.C. §2255

1.

The Court ordered the government to respond to Martinez' motion requesting appointment of new counsel, construed as a 28 U.S.C. §2255 motion filed on November 28, 2001. The government's reply is on record (DOC 5). On May 30, 2002, Martinez filed a response to the government's reply on May 30, 2002, raising additional issues. The government moves to dismiss and, in the alternative, moves for summary judgment.

2.

The government denies each and every allegation of fact made by Martinez, except those supported by the record and those specifically admitted herein, and demands proof thereof.

1

3.

The 'statement of the case' is contained in the government's original response to Martinez' §2255 motion (DOC. 5).

4.

## ALLEGATIONS

In his response of May 30, 2002, Martinez brings additional complaints that appellate counsel failed to follow Martinez' instructions to pursue specific issues on direct appeal:

(1)   Appellate counsel should have alleged that Martinez was entitled to a downward departure on the basis of "diminished capacity" and that trial counsel provided 'ineffective assistance' by failing to move for downward departure at sentencing for "diminished capacity" as evidenced by the neurological report by Dr. Guillermo Suarez;

(2)   Appellate counsel should have alleged that Martinez' plea was involuntary as it was the result of the trial level AUSA threatening to prosecute Martinez' family members unless Martinez plead guilty;

(3)   Appellate counsel should have alleged that the district court's order of restitution placed "impossible" demands upon Martinez, that an alternative order of a lesser amount should have been argued to the 5th Circuit, and further that trial counsel was ineffective in failing to argue for a lesser amount of restitution at sentencing.

5.

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §2255 (eff. April 24, 1996). Martinez is currently incarcerated on "house arrest" at his residence. He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2255 from his conviction in the Brownsville Division of the Southern District of Texas. A § 2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence." *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted). Relief under a §2255 motion "is warranted for errors that occurred at trial or sentencing." *Id.* He seeks relief from his conviction and sentence, and the relief sought under §2255 is appropriate .

6.

The underlying facts of the case are set forth in *Martinez*, 263 F.3d at 437. The government also included in its response to Martinez' §2255 Motion a short summary based upon the PSR and portions of the record.

7.

The four grounds justifying relief under 28 U.S.C. §2255 are: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) that the sentence was in excess of the maximum authorized by law"; and (4) that the

3

sentence is otherwise "subject to collateral attack". 28 U.S.C. § 2255 (2000). Thus, motions to vacate sentences "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted); *see Davis v. United States*, 417 U.S. 333, 346 , 94 S.Ct. 2298, 2305 (1974); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

A "'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 1594 [1982]). Once the direct review process has been terminated, a presumption of finality attaches and the conviction is reviewable only on issues of constitutional or jurisdictional magnitude. *Shaid*, 937 F.2d at 232 (citing *Hill*, 368 U.S. at 428, 82 S.Ct. at 471). If a claim of constitutional or jurisdictional dimension is raised, it is reviewable for the first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice. *Id.* On the other hand, "[n]onconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994).

4

To obtain post-conviction relief in a collateral attack, a defendant must show either: (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *see Frady*, 456 U.S. at 167-68, 102 S.Ct. at 1594; or (2) that he is actually innocent. *Shaid*, 937 F.2d at 232. "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611-12 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999). To prove actual innocence, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no [fact finder] would have convicted him." *Id.* (citations and quotations omitted).

8.

To establish ineffective assistance of counsel, the §2255 petitioner must allege and prove: (1) that his counsel's performance was deficient; and (2) that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *United States v. Walker*, 68 F. 3d 931, 934 (5th Cir. 1995); *see also Glover v. United States*, 531 U.S. at 198, 202-04, 121 S.Ct. 696, 700-01(2001)(discussing factors to consider in evaluating claim to demonstrate prejudice).

Under the first prong, counsel's performance is deficient if it is objectively unreasonable. *Walker,* 68 F. 3d at 934. Under the second prong, prejudice is "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *accord Glover*, 531 U.S. at 204, 121 S.Ct. at 701 (citing, *inter alia*, *Strickland)*. Significantly, the petitioner making the claim of ineffective assistance must identify the acts or omissions that are alleged to have been the result of unreasonable professional judgement. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Mere conclusory allegations are insufficient to raise a constitutional issue in a habeas case. *United States v. Woods*, 870 F. 2d 285, 288 n.3 (5th Cir. 1989); *Schlang v. Heard*, 691 F. 2d 796, 799 (5th Cir. 1982); *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S.Ct. 838, 842 (1993)("[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'")(quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

A claim of ineffective assistance of counsel may be rejected based on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance. *Micheaux v. Collins*, 911 F.2d 1083, 1090-91 (5th Cir. 1990). The failure to prove both components of the *Strickland* test, either a deficient performance or actual prejudice, defeats an ineffective assistance claim. *United States v. Abner*, 825 F.2d 835, 846 n. 18 (5th Cir. 1987).

a.  <u>At the plea stage</u>.

"Effective assistance" requires counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French*, 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea, Martinez must demonstrate that, but for counsel's errors, he would not have plead guilty and would have gone to trial. *Id*. citing *Hill*, 474 U.S. at 59.

b.  <u>Sentencing errors</u>

In the context of sentencing errors, the petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

Even if Martinez demonstrates that his counsel provided constitutionally infirm representation, Martinez must also demonstrate prejudice. Generally, Martinez must establish that but for counsel's errors his sentence would be "significantly less harsh". *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)(Spriggs set out exception when "specific demonstrable enhancement" results, then any increase satisfies prejudice prong). Accordingly, within the "constrained discretion" of the Sentencing Guidelines, Martinez need not demonstrate that, absent the error, his sentence would have been "significantly less harsh", he must yet demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. U.S.* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001), *Daniel v. Cockrell*, 283 F.3d 697, 707 FN 17(5th Cir. 2002)(suggesting that in 'constrained discretionary' Sentencing Guidelines, *Glover & Spriggs* exception applies).

c. Appellate Errors

In addition to establishing counsel's performance was objectively unreasonable, Martinez must show a reasonable probability that but for his counsel's unreasonable failure, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 208 (5th Cir. 2001)("to demonstrate prejudice, the petitioner had to

show a reasonable probability that, but for his counsel's unreasonable failure, he would have prevailed on his appeal.") (citation omitted); *United States v. Dovalina*, 262 F.3d 472 (5th Cir. 2001)(where court reviewed evidence to support conviction and found that any error in appellate's counsel's failure to adequately brief an appellate issue was not prejudicial to Dovalina's right to receive a fair trial and have his case adequately reviewed).

Additionally, Martinez has no right to require attorney Barguiarena raise every non-frivolous argument on appeal. *See Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001)(citing *Green v. Johnson*, 160 F.3d 1029, 1043 [5th Cir. 1998]).  A post-conviction petitioner "must show that the failure to raise [an] issue on appeal rendered the entire proceedings, trial and appeal, fundamentally unfair....and [he] bears the 'highly demanding and heavy burden in establishing actual prejudice,' not merely that 'the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (citations omitted).

9.

A.   Diminished Capacity

Under § 5K2.13, the Sentencing Guidelines establishes that:

> A sentence below the applicable guideline range may be
> warranted if the defendant committed the offense while
> suffering from a significantly reduced mental capacity.
> However, the court may not depart below the applicable

9

> guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

In the Commentary:

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

The defendant must establish a causal relationship between his reduced mental capacity and the crime. *United States v. Goossens*, 84 F.3d 697, 702 (4th Cir.1996); *United States v. Sammoury*, 74 F.3d 1341, 1345-46 (D.C.Cir.1996). Even if the defendant qualifies for the departure under the above standard, the district court has the discretion to deny his request.

## 1. Appellate Counsel's failure to raise issue on Appeal

The first hurdle which would confront appellate counsel's attempt to directly raise the issue on appeal that the district court erred in failing to depart downward due to Martinez' "diminished capacity", would be the waiver issue. At sentencing,

on January 13, 2000, counsel for Martinez moved the court to grant a downward departure under §5K2.0 based upon Martinez' health, citing his heart, blood pressure, Alzheimer's and Parkinson's (Sentencing II, 1/13, 2000 p. 8). Martinez' counsel specifically excluded the basis for departure of "mental or psychological conditions" (Sent. II, P. 9). The context of the departure motion related to Martinez' alleged present and future condition, not his past. This represents a waiver of any departure motion based upon "mental or psychological conditions", such as "diminished capacity" at the time of the commission of the offense. A defendant may not claim error in the denial of a remedy that he explicitly disclaimed. *United States v. Wilson*, 116 F.3d 1066, 1087 (5th Cir. 1997)(rev'd on *Bailey* grounds); *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002); *United States v. Thompson*, 289 F.3d 524, 526 (8th Cir. 2002).

Should this Court find that Martinez had not waived the "diminished capacity" departure at sentencing, in that his failure to urge the issue at sentencing was "inadvertent", appellate counsel would have been confronted with a plain error standard of review in bringing the issue for the first time on direct appeal. *Thompson*, 289 F.3d at 526. To constitute a plain error, a district court's decision must be: (1) an error; (2) which is clear or obvious; and (3) which affects substantial rights. *United States v. Olano*, 507 U.S. 725, 733-35, 113 S.Ct. 1770,

11

123 L.Ed.2d 508 (1993). In addition, although Rule 52(b) of the FEDERAL RULES of CRIMINAL PROCEDURE gives the circuit court discretion to notice plain errors, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 732, 736- 37, 113 S.Ct. 1770; *United States v. Evans*, 272 F.3d 1069, 1080 (8th Cir.2001).

Here, there was no error on the part of the district court. The evidence before the district court was that Martinez had engineered a complicated and highly complex fraud, involving defrauding the City of La Feria, Texas, and deceiving numerous large corporations and banks. It would be frightening to the government to believe that Martinez engineered and carried out such a masterful fraud over a four-year period while operating under a "diminished capacity". If he was able to steal $950,000.00 from La Feria while "diminished", what would this high school graduate be capable of under full capacity? Martinez committed a crime and perpetrated a fraud of which Michael Milken could be proud.

Martinez also demonstrated a high level of continued deception and a desire to avoid responsibility or punishment for his crime. Although he was initially found to be incompetent to stand trial, he was later found to be feigning those symptoms (Sent II, p. 10-11). The record does not provide any indication, other than

12

Martinez' feigned performances, that he was eligible for a downward departure for "diminished capacity".

> 2. Trial Counsel was Ineffective for failing to raise "diminished capacity".

Assuming the Court finds that Martinez satisfies the "cause and prejudice" hurdle, as the record reveals Martinez was not entitled to such departure, Martinez can not demonstrate that trial counsel's performance was objectively unreasonable nor that Martinez suffered prejudice therefrom. He, thus, fails in his burden. Furthermore, the district court was aware of the alleged "evidence" of Martinez' "diminished capacity" in the form of the medical report by Dr. Suarez. The district court could have granted Martinez a downward departure *sua sponte* if the court believed Martinez eligible, further defeating any prejudice by counsel's decision not to urge such motion. *United States v. Harris*, 104 F.3d 1465, 1477 (5th Cir. 1997).

Furthermore, statements made by the district court at sentencing, dubbing Martinez "a master of deception", made it clear that the district court would not likely find Martinez' claims of "diminished capacity" at all credible. *United States v. Bradford*, 78 F.3d 1216, 1225 (7th Cir. 1996). Indeed, the district court sentenced Martinez to the top of the Guideline level he scored.

B.   Involuntary Plea

> 1.   Legal Principles Governing Involuntary Plea.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 at 255 (5th Cir.2000).    The terms "voluntary" and "knowing" are frequently used interchangeably, although, strictly speaking, the terms embody different concepts. Compare 1A Charles Alan Wright, FEDERAL PRACTICE and PROCEDURE §172, 142-144 (3rd ed.1999)(stating a plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature), with *Id.* §173, 171-173(stating that a plea is not knowing unless, among other things, defendant understands "what the maximum possible penalty is, including any potential fine and the effect of any special parole or supervised release term"). *United States v. Hernandez*, 234 F.3d 252, at 254 to 255.  To be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence." See *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).    The defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur.  See *Trujillo v. United States*, 377 F.2d 266, 266 (5th Cir.), *cert. denied*, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967).

14

During the plea proceedings, Martinez swore that no one had exerted any force or pressure on him to plead guilty (Re-arraignment p. 46) (the district court found Martinez fully understood the charges against him and his constitutional and statutory rights that his plea was made freely and voluntarily (Re-arraignment p. 47). The record, thus, demonstrates that Martinez entered his plea voluntarily and that his contention that his plea was not voluntary does not entitle him to §2255 relief. *United States v. Drummond*, 910 F.2d 284, 285-286 (5th Cir. 1990)(although no 'direct' evidence on point, record contained 'conclusive' evidence that plea was voluntary obviating need for hearing); *See Diggs v. United States*, 447 F.2d 460 (5th Cir. 1971). As evidenced by the attached affidavit by Martinez' trial counsel, counsel contradicts Martinez' claims that the government threatened Martinez.

C.    <u>Restitution</u>

§5E1.1. governs restitution:

(a) In the case of an identifiable victim, the court shall--

(1) enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. §1593, §2248, §2259, §2264, §2327, §3663, or §3663A, or 21 U.S.C. §853(q); or

(2) impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution

is authorized under 18 U.S.C. §3663(a)(1)
but otherwise meets the criteria for an order
of restitution under that section.

(b) Provided, that the provisions of subsection (a) do not
apply--

(1) when full restitution has been made; or

(2) in the case of a restitution order under 18
U.S.C. §3663; a restitution order under 18
U.S.C. §3663A that pertains to an offense
against property described in 18 U.S.C.
§3663A(c)(1)(A)(ii); or a condition of
restitution imposed pursuant to subsection
(a)(2) above, to the extent the court finds,
from facts on the record, that (A) the number
of identifiable victims is so large as to make
restitution impracticable; or (B) determining
complex issues of fact related to the cause or
amount of the victim's losses would
complicate or prolong the sentencing process
to a degree that the need to provide
restitution to any victim is outweighed by the
burden on the sentencing process.

(c) If a defendant is ordered to make restitution to an
identifiable victim and to pay a fine, the court shall order
that any money paid by the defendant shall first be
applied to satisfy the order of restitution.

(d) In a case where there is no identifiable victim and the
defendant was convicted under 21 U.S.C. §841, §848(a),
§849, §856, §861, or §863, the court, taking into
consideration the amount of public harm caused by the
offense and other relevant factors, shall order an amount
of community restitution not to exceed the fine imposed
under §5E1.2.

(e) A restitution order may direct the defendant to make a single, lump sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments. See 18 U.S.C. §3664(f)(3)(A). An in-kind payment may be in the form of (1) return of property; (2) replacement of property; or (3) if the victim agrees, services rendered to the victim or to a person or organization other than the victim. See 18 U.S.C. § 3664(f)(4).

**(f) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.** (emphasis added)

Congress enacted 18 U.S.C. §3664 (which was originally designated 18 U.S.C. §3580) in the Victim and Witness Protection Act of 1982. Section 3664 has been amended several times, most recently by the Antiterrorism and Effective Death Penalty Act of 1995. Section 3664 spells out in considerable detail the procedure to be followed when issuing an order of restitution. Section 3664(d)(3) requires the defendant to provide the probation officer with an affidavit "fully describing the financial resources of the defendant." Section 3664(e) requires the government to establish the amount of the victim's loss and the defendant to establish the "financial resources of the defendant and the financial needs of the defendant's dependents," specifying that the burden is preponderance of the evidence. Section 3664(f)(1)(A)

17

directs the court to "order restitution to each victim in the full amount of each victim's losses...without consideration of the economic circumstances of the defendant." Section 3663(f)(3)(B), however, authorizes the court to direct the defendant to make periodic nominal payments if the court finds ... that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

1.  Appellate Counsel's Failure to Raise Restitution Issue on Direct Appeal.

As Martinez waived appeal of the district court's factual findings, any attack on the restitution order on direct appeal would be limited to a claim that the district court's ignoring §5E1.1(f) represented a misapplication of the Guidelines. Martinez concedes he "waived appeal of the restitution imposed". Section 5E1.1(f) is a permissive provision. It employs the term "may", which suggests the provision is discretionary upon the district court. *United States v. Onyiego*, 286 F.3d 249, 256 (5th Cir. 2002)(restitution statute contains discretionary & mandatory provisions); *United States v. Gordon K.*, 257 F.3d 1158, 1162 (10th Cir. 2001)(use of word "may" in restitution statute indicates restitution is discretionary); *Hughey v. United States*, 495 U.S. 411, 420, 110 S.Ct. 1979, 1984 (1990)(court has discretion to order full or partial restitution). A purely discretionary sentencing decision is not reviewable

18

by the Circuit Court, as it does not qualify as "an incorrect application of the sentencing Guideline" under 18 U.S.C. §3742. *United States v. Sammoury*, 74 F.3d 1341, 1343 (DC Cir. 1996); *United States v. Lowe*, 136 F.3d 1231, 1233 (9th Cir. 1998)(sentence at top of applicable Guideline is discretionary sentencing determination not reviewable on appeal).

If this Court finds the matter was directly appealable, the issue was sufficiently raised by trial counsel in the district court to preserve it by arguing that Martinez was destitute (Sent. Memorandum P. 24-27; Objections to PSR p. 35). In such case, the Fifth Circuit would have reviewed the district court's determination that Martinez had the ability to pay the ordered restitution under 'abuse of discretion' standard. *United States v. Patty*, 992 F.2d 1045, 1052 (10th Cir. 1993). A decision is an abuse of discretion if the "record is devoid of any evidence that the defendant is able to satisfy the restitution order .... The potential for repayment cannot be based on mere chance". *Id*. The Fifth Circuit would accept the district court's supporting factual findings unless clearly erroneous. *Id*.

If this Court determines §5E1.1(f) was not sufficiently raised in the district court, it would have been reviewed there under the plain error standard. To constitute a plain error, a district court's decision must be: (1) an error; (2) which is clear or obvious; and (3) which affects substantial rights. *United States v. Olano*,

19

507 U.S. 725, 733-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In addition, although Rule 52(b) of the FEDERAL RULES of CRIMINAL PROCEDURE gives the circuit court discretion to notice plain errors, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 732, 736-737, 113 S.Ct. 1770; *United States v. Evans*, 272 F.3d 1069, 1080 (8th Cir.2001).

The district court's "decision" to order full restitution rather than partial as provided by §5E1.1(f) was neither an abuse of discretion nor plainly erroneous. The record establishes that Martinez had spent several years stealing $953,322.07, laundering the money through various real estate investment vehicles and shell corporations, and eventually sending monies out of the country and into "offshore" accounts (Sent I., p. 58, 68-73, 81-83, 110, 117). Martinez' claims of indigence should be weighed against Martinez record of deception and failure to disclose fully the status and location of his "offshore" accounts and the funds sent there (Sent. II., p. 16). So the record is not devoid of evidence that Martinez can pay the restitution. Martinez has shown himself to be an extremely resourceful individual. Additionally, there is support that he can earn future income to repay the citizens of La Feria, from whom he stole.

2.   <u>Trial Counsel Failed to Urge §5E1.1(f).</u>

Trial Counsel objected to any restitution being ordered due to Martinez' inability to make restitution (Sent. Memorandum p. 24-27). Even though counsel argued that no restitution should be ordered, Martinez claims counsel was deficient in not arguing that partial restitution should be ordered.

"[W]e may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation .... Trial counsel may not be deemed ineffective merely because a different procedure or strategy might have produced a different result ..... The reviewing courts must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance". *Black v. Bell*, 181 F.Supp.2d 832, at 851 (WD Tenn. 2001)(Citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Trial counsel thoroughly briefed and contested the restitution issue. Trial counsel arguing for no restitution rather than arguing for partial restitution, represents the type of strategy determination best left to trial counsel. As counsel's affidavit discloses, such decision was the result of a strategic choice, which may not be legally assailed here.

10.

No evidentiary hearing is necessary to resolve issues presented. *United States v. Samuels*, 59 F.3d 526, 530 & ns.16-17 (5th Cir. 1995)(citations omitted); *United States v. Bartholomew*, 974 F.2d 39,41-42 (5th Cir. 1992).  Martinez alleges no facts which would warrant an evidentiary hearing under 28 U.S.C. § 2255. Therefore, the government moves for dismissal, or in the alternative, summary judgment.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the government respectfully

prays that Martinez' §2255 petition be dismissed or, in the alternative, be subject

to summary dismissal.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

JAMES L. TURNER
Chief, Appellate Division
Assistant United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas, 78520
Texas Bar No. 06070500
Federal Bar No. 9314
(956) 548-2554

23

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the above document has been served by placing same in United States mail, postage prepaid, today, JUNE _18_, 2002, addressed to:

Jeanette Mercado
Attorney for Petitioner
P.O. Box 532541
Harlingen, TX 78553

cc: Leticia Barguiarena
    Barguiarena & Barron
    302 Kings Highway, Suite 107
    Brownsville, TX 78521

cc. John J. Ritenour Jr.
    310 S. St. Mary's Street, Suite 1610
    San Antonio, Texas 78205-3192

                 Mark M. Dowd
                 Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

MANUEL ALBERTO MARTINEZ,    §
    Petitioner-Defendant,    §
                    §
v.    §    (CA B-01-199)
                    §
UNITED STATES OF AMERICA,    §
    Respondent-Plaintiff.    §
    (CR B-98-394-01-S)    §

## RECOMMENDED ORDER

The Court, having considered Martinez' motion to vacate sentence under 28 U.S.C. § 2255 and the government's answer, concludes that dismissal is warranted. The complaints concerning attorneys Leticia Barguiarena and John Ritenour Jr., are factually and legally unfounded. Furthermore, no prejudice is shown. Dismissal is warranted and recommended.

DONE this _____ day of _____, 2002 at Brownsville, Texas.

_____
UNITED STATES MAGISTRATE JUDGE

# AFFIDAVIT

STATE OF TEXAS            )

COUNTY OF BEXAR          )


On this date appeared before me, a Notary Public in and for the State of Texas, John J.

Ritenour, Jr., who after being duly sworn upon his oath, deposed and stated as follows:

My name is John J, Ritenour, Jr. I am a practicing attorney, and have been in practice, and licensed as such, since 1995. I am licensed to practice law before all courts of the State of Texas, the Western District of Texas, the United States Fifth Circuit Court of Appeals, and the United States Supreme Court. I limit my practice exclusively to the area of Criminal Defense, in both State and Federal Court.

I was originally retained as co-counsel to represent Mr. Manuel Alberto Martinez with regard to criminal charges filed against him in the United States District Court for the Southern District of Texas, Brownsville Division in cause no. 98-CR-394. Ms. Marina Thais Douenat was lead defense counsel. As Mr. Martinez had already been assigned an attorney from the federal Public Defender's Office in Brownsville, Ms. Douenat and I coordinated and filed a Motion for Substitution of Counsel, a Motion to Appear *Pro Hac Vice* and a Notice of Appearance in July 1998. While Ms. Douenat remained the designated lead attorney on the case, she eventually took a secondary role in that representation. I subsequently provided the primary representation to Mr. Martinez during the pretrial, plea negotiation and entry, and sentencing phases of his case.

I have been asked to address four specific allegations raised by Mr. Martinez in his §2255 action, numbered B-01-199. The first is that Mr. Martinez entered his plea as the results of threats by the United States Attorney's Office - specifically that if he did not plead, certain members of his family would be prosecuted. I was aware from our first meeting with the assigned prosecutor, Mr. Oscar Ponce, that the government was investigating possible criminal charges against members of Mr. Martinez' family - specifically against his wife. At no time, however, was I ever aware of any threat by Mr. Ponce, or any member of the United States Attorney's office, to prosecute those family members if Mr. Martinez refused to plead to the charges. At no time did I ever suggest such action in my discussions with Mr. Martinez regarding his decisions of whether or not to go to trial, or whether or not to accept the plea offered by the government. I do know that Mr.

Martinez was concerned about such possible prosecution, and he asked about such charges. To the best of my recollection, my answer was that the government had said that they were investigating, but that nothing had been filed, and if they were going to do anything, it would probably have been done by then. While I don't have specific recollection of having said it, I probably explained my rationale as being that the Government liked conspiracy cases, and if they had enough to charge him and his family with conspiracy, they would have done it already, if for no other reason than to get one or more defendants to provide evidence against the others in return for dismissed charges, and make the government's case stronger. I am completely unaware of any such influence on Mr. Martinez' decision to plead guilty.

The second and third issues are related, and involve a medical report by Dr. Guillermo Suarez. I understand that Mr. Martinez contends that he didn't receive a copy of that report until four months after he pled, and that it was favorable to him because it concluded that he was not malingering. I have reviewed the documents provided to me on June 14, 2002 by the Assistant US Attorney, Mr. Dowd, regarding that issue. They consist of a cover letter from the Department of Justice addressed to one Juanita Longoria (whom I knew to be Mr. Martinez' wife), dated October 1999. Attached to that letter are four pages of a medical record, including a two-page narrative by one Guillermo A. Suarez, M.D., dated February 8, 1999. Dr. Suarez' "impression" is indicated as "Psychiatric disorder, rule out malingering." I do not recall seeing this report before.

The allegation by Mr. Martinez' habeas attorney is that I, as his trial counsel, "could have and should have used the doctor's diagnosis to inform the Court of Petitioner's mental confusion and psychiatric disorder to argue diminished capacity during his sentencing hearing." I agree that Dr. Suarez' report contains potentially exculpatory material that probably should have been revealed to me by the government. However, even if I had been aware of that report at the time of Mr. Martinez' sentencing hearings on November 5, 1999 and January 13, 2000, I would not have used it in such a manner.

First, the report was written during the time that Mr. Martinez was a patient in the psychiatric hospital at FMC Rochester, Minnesota, following the trial court's finding that he was incompetent to stand trial. The report indicates that Mr. Martinez "is being admitted to FMC," and concludes with "[t]hank you for asking me to see Mr. Martinez." Mr. Martinez was under evaluation at FMC Rochester from December 1998 until April 1999, so my conclusion is that this was one of many sources of information used in that evaluation. Unfortunately for Mr. Martinez, the final report resulting from that evaluation process was absolutely devastating. For example, it reported instances of Mr. Martinez exercising on a stationary bike and lifting weights with both arms when he was unaware he was being observed - directly contradicting Dr. Suarez' recommendation of

psychotherapy "to see if he can start ambulating, going from a wheelchair to a walker and so forth." It also reported evidence significantly inconsistent with Mr. Martinez' complained-of psychiatric difficulties, such as selective historical memory when it benefitted him, speaking fluently with other patients, and successfully playing three bingo cards at a time. The final conclusion was a diagnosis of malingering. Thus one of several reports, written early in the evaluation process, was not, in my judgment, sufficient to convince the Court that the final diagnosis was incorrect.

Further, in light of FMC Rochester's report that Mr. Martinez was not only competent, but malingering, I believed that even if I did follow up on that information, and obtain such a report, there was no argument I could make on that point that the Judge would find credible. I believed that, after his return from FMC Rochester and the Court's review of the associated report, any argument concerning Mr. Martinez' mental state would not only fail miserably, but would offend the Judge to the point of potentially losing credibility on our other arguments. We had several serious issues with what I believe was an extremely unobjective and incredulous PSR. In my judgment, any effort in that area was a sure loser, and we simply couldn't afford to advance losing arguments. Finally, I note that the cover letter from the Department of Justice is dated October 20, 1999. There is no indication of when Mr. Martinez' wife received that letter, but I would note that his sentencing hearing occurred in two phases - the first on November 5, 1999, and the second on January 13, 2000. One would think it logical to believe that Mr. Martinez would have been at least constructively aware of the report by the time of the second phase of the sentencing hearing. I do recall that Mr. Martinez did advise me that he had been evaluated by one doctor, whom he believed to be associated with the Mayo Clinic, who decided he had a psychiatric disorder, and was not malingering. However, in light of the final FMC Rochester report I chose not to follow-up on that information. I do recall discussing my decision and rationale with Mr. Martinez. I do not recall him objecting to that decision or rationale.

The fourth issue is that I, as trial attorney, should have argued for an alternative form of restitution. In raising this issue, Mr. Martinez' habeas attorney cites U.S.S.G. § 5E1.1(e) and (f), and by reference 18 U.S.C. §3644(f)(4). Those references provide for an in-kind payment of restitution "in the form of (1) return of property; (2) replacement of property; or (3) if the victim agrees, services rendered to the victim or to a person or organization other than the victim." I will admit that I did not argue for an alternative form of restitution, but that was a conscious decision - one that did not take a great deal of deliberation or research. The first problem with this approach was that the "property" addressed by items (1) and (2) of the references is money in an amount in excess of $900,000. Mr. Martinez consistently maintained that he did not have assets in that amount, so he could have neither returned nor replaced that property. Since the "victim" in this

case was the City of La Feria, it appeared ludicrous to me to ask the Court to assess $900,000 worth of services to the victim. Finally, after the first part of the sentencing hearing on November 5, 1999, it was clear to me that the Court believed Mr. Martinez had sufficient assets yet undiscovered by the government, and was determined to force Mr. Martinez to access those assets. Again, we still had remaining issues having a significant impact on Mr. Martinez' sentence, and in my judgment it was not in his interest to advance an argument that had no chance of being accepted, and could potentially cost credibility on subsequent arguments. Did I not argue for an alternative form of restitution? Yes, I did not. Was that an oversight or failure on my part? No, it was a conscious decision.

I have read the foregoing affidavit and swear that the factual statements contained therein are true and correct.

_____
John J. Ritenour, Jr.

Signed and sworn to before me on this __16th__ day of __June__, 2002.


J. H. MENDEZ
MY COMMISSION EXPIRES
April 8, 2004

_____
Notary Public

My Commission expires:

_____4-8-04_____